**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **BRIAN FRANKLIN,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | )   Cause No. 1:16-cv-1250-WTL-MPB |
| | ) |
| **NANCY A. BERRYHILL, Acting** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,**[1] | ) |
| | ) |
|     **Defendant.** | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Brian Franklin requests judicial review of the final decision of the Defendant, Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"), Franklin's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act between April 13, 2006, and March 1, 2009. The Court, having reviewed the record and the briefs of the parties, rules as follows.

### I.    APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[2] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to

---

[2]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## II.   BACKGROUND

Franklin filed for DIB and SSI on May 21, 2008, alleging that he became disabled on April 13, 2006, due to coronary artery disease, prior myocardial infarction, prior myocardial dysfunction, prior stents with balloon angioplasty, pacemaker/defibrillator, prior congestive heart failure, and nonsustained ventricular tachycardia. After denials at the initial and reconsideration levels, Franklin filed a request for a hearing before an ALJ. Hearings were held in Indianapolis, Indiana on August 11, 2010, and September 20, 2010, before ALJ John H. Metz. Two medical experts and a vocational expert appeared and testified. On November 3, 2010, the ALJ issued a decision denying Franklin benefits, and on December 28, 2011, the Appeals Council upheld the ALJ's decision and denied the request for review. An action for judicial review ensued, and on February 21, 2013, this Court issued an Order reversing and remanding the decision of the Commissioner for further proceedings.

Another hearing was held on July 28, 2014, before ALJ Metz in Indianapolis, Indiana. Franklin was represented by attorney Melissa Davidson, and a medical expert and vocational expert appeared. On September 17, 2014, the ALJ issued a partially favorable decision granting Franklin benefits as of March 1, 2009. On March 25, 2016, the Appeals Council upheld the ALJ's decision and denied the request for review. This action for judicial review ensued.

3

### III. THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ determined that Franklin had not engaged in substantial gainful activity since the alleged disability onset date. The ALJ found that Franklin met the disability insured status requirements of the Act (for purposes of DIB) through June 30, 2012. At steps two and three, the ALJ concluded the claimant suffered from the following severe impairments: coronary artery disease, prior myocardial infarction, prior myocardial dysfunction, prior stents with balloon angioplasty, pacemaker/defibrillator, prior congestive heart failure, and nonsustained ventricular tachycardia, chronic obstructive pulmonary disease, and hypertension (without end organ damage), but that his impairments, singly or in combination, did not meet or medically equal a listed impairment prior to March 1, 2009. At step four, the ALJ determined that, prior to that date, Franklin had the residual functional capacity ("RFC") to perform a limited range of light work, and specifically could

> stand no more than thirty minutes to one hour at one time, for a total of three hours out of an eight hour day; and he can walk no more than thirty minutes to one hour at one time, for a total of three hours out of an eight hour day. [Franklin] can no more than frequently reach, or perform pulling or pushing (bilaterally). He may no more than frequently operate foot controls (bilaterally). [Franklin] may no more than occasionally balance, stoop, kneel, crouch, crawl, or work around moving parts. He may no more than occasionally climb stairs, and can never climb ladders, scaffolds, or ropes. [Franklin] can never work at unprotected heights, and should avoid exposure to dust, odors, respiratory irritants, and temperature extremes. He can never perform commercial driving.

R. at 853. The ALJ concluded that Franklin was unable to perform his past relevant work but that, prior to March 1, 2009, there were jobs that existed in significant numbers in the national economy that Franklin could have performed. Accordingly, the ALJ concluded that, prior to March 1, 2009, Franklin was not disabled as defined by the Act.

## IV. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Franklin's brief (Dkt. No. 18) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V. DISCUSSION

Franklin raises two issues on appeal. Each is addressed, in turn, below.

### A. The ALJ's Analysis of Listing 4.02

Franklin argues that the ALJ erred by failing to properly analyze the evidence in the listing discussion. As the claimant, Franklin "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Franklin concedes that he cannot show an ejection fraction below 30% that did not result from a myocardial infarction. However, he argues that the ALJ erred by failing to address Listing 4.02(A)(1)—left ventricular end diastolic dimensions greater than 6.0 cm. Franklin points to March 2008 echocardiography report showing an LVIDd of 6.1 cm. R. at 370. That report lists the normal value of LVIDd as between 3.5 and 6.0.

Even if Franklin could meet the A component of the Listing, he still would have to meet the B component. Specifically, § 4.02(B) requires Franklin to show one of three things: (1) persistent symptoms of heart failure seriously limiting the ability to complete activities of daily living; (2) three or more separate episodes of acute congestive heart failure within a twelve-month period; or (3) inability to perform an exercise tolerance test at a workload equivalent of 5 METs or less due to either (a) fatigue and chest discomfort, (b) three or more premature ventricular contractions, (c) a decrease of 10 mm Hg or more in systolic pressure below the

systolic baseline, or (d) signs attributable to inadequate cerebral perfusion. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02(B). In his brief, Franklin does not argue that he meets the B component of the Listing. Further, Dr. John Pella, a medical expert, testified at the July 2014 hearing that Franklin met Listing 4.02 as of March 2009 but that Franklin did not meet the B component of that Listing prior that period.

With regard to (B)(1), activities of daily living, the ALJ found the following: "[T]he record does not indicate that the claimant experienced persistent symptoms of heart failure that very seriously limited his daily activities, or three or more separate episodes of acute congestive heart failure within a twelve-month period." R. at 852. Specifically, the ALJ found the following:

> In regard to the claimant's daily activities, the evidence as a whole demonstrates his limitations are less severe than he alleges. The claimant testified that he is divorced and lives in the basement of a home owned by his parents. The claimant previously reported that he lived in his own home, and reported that he moved into his parents' home due to financial hardship. The claimant also reported that his seventeen-year-old daughter stays with him every other weekend. He indicated that he is able to perform activities such as showering, getting dressed, making a bed, cooking, dusting, laundry, grocery shopping, and yard work at a normal pace. The claimant reported that he prepares meals on a daily basis, and that he mows the yard, and completes some household repairs. The claimant testified that he can drive, and that he drives two to three times a week, most often fifteen to twenty miles to shop in a store. He also reported that he spends time riding a motorcycle. Finally, there is no indication that the claimant is unable to attend to his personal hygiene needs. Accordingly, I find the claimant's daily activities are consistent with the ability to perform work according to the aforementioned modest residential functional capacity.

R. at 854-55 (citations omitted).

With regard to (B)(2), Franklin has not pointed to evidence of three or more episodes of acute congestive heart failure within a consecutive twelve-month period. The Commissioner's Response Brief characterizes Franklin's position as the following regarding this issue:

> Second, Plaintiff cannot show three or more episodes of acute congestive hearty failure within a consecutive twelve-month period. Both the medical expert and Plaintiff himself admitted that the evidence did not establish as much (Tr. 835-

6

> 36), and Plaintiff does not contest this in his brief (Brf. at 13). As a result, Plaintiff cannot establish this aspect of the "B" component.

Dkt. No. 23 at 7-8. Franklin did not file a reply brief contesting this characterization or pointing to evidence to establish that (B)(2) is met.

With regard to (B)(3), The Commissioner's brief characterizes Franklin's position as the following regarding this issue: "Plaintiff makes claim to satisfying this portion of § 4.02(B)." Dkt. No. 23 at 8. Again, Franklin did not file a reply brief contesting this characterization or pointing to evidence to establish that (B)(3) is met. The ALJ stated that Franklin "had no chest pain, heaviness, pressure, palpitations, or shortness of breath" when observed by his cardiologist. R. at 852. Between April 2006 through February 2009, Franklin underwent a single exercise tolerance stress test in June 2007. He exercised at 7 METS and successfully completed the stress test. R. at 383, 465. The ALJ contrasted this finding to the results of Franklin's September 2009 stress test, where he appeared far more limited.

Contrary to Franklin's assertion, the ALJ properly analyzed whether Franklin met or equaled a listing. Notably, Franklin has not argued that he meets the Listing; he merely argues that the ALJ erred in failing to address the left ventricular diastolic dimensions. However, the ALJ discussed component B of Listing 4.02 at length. Therefore, even if the ALJ erred in failing to analyses whether the left ventricular diastolic dimensions met component A of the Listing, any such error is harmless. The Seventh Circuit has discouraged remand in cases where the ALJ would reach the same result. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[W]e will not remand a case for further specification when we are convinced that the ALJ will reach the same result."). Remand is not necessary for a further discussion of Listing 4.02, as substantial evidence supports the ALJ's step three determination.

### B. The ALJ's RFC Finding

Franklin also argues that the ALJ's RFC finding is internally inconsistent and unreliable, pointing to what he alleges are two different RFC findings.

Specifically, the ALJ's RFC finding found that

> prior to March 1, 2009, the date [Franklin] became disabled, [Franklin] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he can stand no more than thirty minutes to one hour at one time, for a total of three hours out of an eight hour day; and he can walk no more than thirty minutes to one hour at one time, for a total of three hours out of an eight hour day. [Franklin] can no more than frequently reach, or perform pulling or pushing (bilaterally). He may no more than frequently operate foot controls (bilaterally). [Franklin] may no more than occasionally balance, stoop, kneel, crouch, crawl, or work around moving parts. He may no more than occasionally climb stairs, and can never climb ladders, scaffolds, or ropes. [Franklin] can never work at unprotected heights, and should avoid exposure to dust, odors, respiratory irritants, and temperature extremes. He can never perform commercial driving.

R. at 853.

Later, in part of the SSR 96-7p discussion, the ALJ stated

> in an abundance of caution, I have accounted for the location, duration, frequency, and intensity of the claimant's pain and other symptoms by limiting him to work at the sedentary level in the aforementioned modest residual functional capacity, with the following additional restrictions: he may stand or walk for no more than thirty minutes at one time, for a total of no more than two hours out of an eight hour workday. [Franklin] may never operate foot controls, and may not commercially drive. He may never climb ladders, ropes, scaffolds, or stairs; must avoid work around unprotected heights and unprotected hazardous moving machinery; and may never crawl. [Franklin] may no more than occasionally bend, stoop, or kneel. He must (sic) concentrated exposure to fumes, respiratory irritants, and temperature extremes.

R. at 857.

While the ALJ's second decision refers to sedentary work, that reference appears to be a scrivener's error, given the repeated references to light work through the RFC and the step five finding. A clerical error such as this does not require remand when the commonsense reading of

8

the ALJ's decision make the RFC finding apparent. *See Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999).

Further, the ALJ's RFC finding is directly supported by the testimony of Dr. Pella. At the July 2014 hearing, Dr. Pella testified that, prior to March 2009, that Franklin was limited to lifting and carrying of 20 pounds occasionally and 10 pounds frequently; had no limitations in sitting or standing, and could walk for up to three hours in an eight-hour workday; not climb ladders or scaffolds and occasionally perform other postural activities; and could frequently reach overhead and push or pull.[3] The ALJ limited Franklin further, restricting him to three hours or standing and three hours of walking. The opinions of the state agency medical consultants also support this finding. As such, the ALJ built the accurate and logical bridge required to support his finding. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). He sufficiently articulated the assessment of the evidence, demonstrating that he considered the important evidence and enabling the court to trace the path of reasoning. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). According, the ALJ's finding was supported by substantial evidence, and reversal if not required.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED: 8/29/17**

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[3] Franklin challenges Pella's opinion on that basis that Pella did not hear Franklin's testimony at the hearing. However, Franklin did not testify at that hearing.